**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HUBERT DE BONAFOS DE BELINAY**, <br><br> Plaintiff, <br><br> v. <br><br> **ALEJANDRO N. MAYORKAS, et al.**, <br><br> Defendants. | Case No. 1:24-cv-00240 (CRC) |

## MEMORANDUM OPINION & ORDER

Plaintiff Hubert de Bonafos de Belinay, a French citizen, brings this action to compel several government agencies to adjudicate his nonimmigrant visa application. In August 2023, the United States Citizenship and Immigration Services ("USCIS") approved Plaintiff's application for an E-2 nonimmigrant treaty-investor visa. Three months later, Plaintiff attended an interview at the U.S. Embassy in Paris to finalize the application. Following the interview, the Embassy informed Plaintiff that his application had been placed into administrative processing, leaving his case stalled with no clear timeline for resolution. Plaintiff then initiated this action asserting that the government has unlawfully delayed final adjudication of his application and seeking to compel the defendants to conclusively decide it. The government has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Concluding that Plaintiff has standing, and that subject matter jurisdiction otherwise lies, the Court will dismiss Plaintiff's unreasonable delay claim for failure to state a claim. But it will deny the motion as to his due process claim, as the government challenges only Plaintiff's standing to bring that claim, not the claim's merits.

I.  **Background**

The Court draws the following background from the allegations in the Complaint ("Compl.").

Hubert de Bonafos de Belinay, a citizen of France, resides in Paris with his family. Compl. ¶¶ 4, 8. In August 2023, USCIS approved Plaintiff's application for an E-2 nonimmigrant visa. Id. ¶ 9. The E-2 visa is available to foreign nationals from certain countries who invest substantial capital in a U.S. business, enabling them to manage and develop their enterprise. See 8 U.S.C. § 1101(a)(15)(E)(ii); 22 C.F.R. § 41.51; Compl. ¶ 9.

In preparation to obtain an E-2 visa stamp for foreign travel, Plaintiff scheduled an interview at the U.S. Embassy in Paris for November 2023. Id. ¶ 10. As requested by the Embassy, he submitted a new E-2 application three weeks before the interview. Id. ¶ 11. At the interview, however, Plaintiff was informed that his application was "rejected" and that the Embassy required "additional information for national security purposes." Id. ¶ 12. Plaintiff was given a form containing supplemental questions concerning his application, which he completed and returned one week after the interview. Id.

The following month, in December 2023, Plaintiff sent a follow-up email to the Embassy seeking an update on the status of his application. Id. ¶ 13. The Embassy responded that the application was still in "administrative processing." Id. Plaintiff's subsequent efforts to obtain updates through both direct inquiries and congressional assistance have yielded no information or timeline for adjudication. Id. ¶¶ 13–15.

Plaintiff alleges that the delay has caused severe personal and financial harm to him and his family. See id. ¶¶ 17–25. He claims his business has lost contracts, suffered employee resignations, and incurred substantial financial burdens due to his inability to travel to the United

States.  Id. ¶¶ 18–22, 24.  Additionally, Plaintiff alleges his family has experienced disruptions, including his children's inability to attend school in the United States, further compounding the emotional toll of the delay.  Id. ¶¶ 23, 25.

In January 2024, Plaintiff filed this action against Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"), Antony Blinken, Secretary of State, and David McCawley, Deputy Chief of Mission of the U.S. Embassy in Paris, in their official capacities. Id. ¶¶ 5–7.[1]  He contends that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361, compel the defendants to adjudicate his visa application without unreasonable delay and seeks a court order to that effect (Counts 1 & 3). Compl. ¶¶ 26–35, 39–43.  Plaintiff also brings a claim under the Due Process Clause of the Fifth Amendment, asserting that the delay in processing his application has deprived him of procedural and substantive due process (Count 2).  Id. ¶¶ 32–38.  The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

**II.   Legal Standards**

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

---

[1] Plaintiff filed his complaint before the recent change in administrations and thus named individuals who no longer hold office as defendants in their official capacities.  As appropriate, the Court substitutes the individuals currently holding these offices as named defendants.  See Fed. R. Civ. P. 25(d).  Specifically, the Court substitutes Secretary of State Marco Rubio in place of former Secretary Blinken, and Department of Homeland Security Secretary Kristi Noem in place of former Secretary Mayorkas.

(D.C. Cir. 2000)).  However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  But on a 12(b)(6) challenge, the defendant bears the burden, and must show that the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))"

### III. Analysis

The government advances five arguments in support of its motion to dismiss: (1) Plaintiff lacks standing; (2) the Secretary of Homeland Security and the Secretary of State are improper parties; (3) the doctrine of consular nonreviewability bars judicial review of the delay; (4) the complaint fails to identify a discrete, non-discretionary duty on the part of the defendants; and (5) the complaint fails to state a plausible claim of unreasonable delay.  The Court will dismiss Plaintiff's unreasonable delay claim for failure to state a claim.  But it will deny the motion as to Plaintiff's due process claim because the government only challenges standing, which the Court finds present, and not the merits of the claim.

  A. <u>Standing</u>

The Court begins with the government's argument that Plaintiff lacks standing to pursue his claims.  In order to establish Article III standing, a plaintiff must demonstrate (1) that he has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged

action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560–61.

The government argues that Plaintiff has suffered no concrete injury to support standing because "allegations of delay in the State Department's processes are insufficient themselves to establish an injury in fact[,]" Mot. to Dismiss at 8–9, and "an inability to travel to the United States" is not a harm recognized by common law, statute, or the Constitution. Id. This argument is "intricately intertwined with [the government's] other jurisdictional argument based on the doctrine of consular nonreviewability," which the Court will discuss further in Section III.B. Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 281 (D.D.C. 2016). But courts in this district have long recognized that a plaintiff who claims that the visa process is taking too long has "suffered an injury in fact: the failure to receive final decisions on their [visa] application[] within a reasonable period." Id. at 282; Khan v. Blome, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022) (collecting cases). Concurring with those other courts, the Court finds that Plaintiff has standing.

The government next argues that the requested relief cannot redress Plaintiff's injury because he has not demonstrated that ordering further adjudication "will result in anything but another refusal" of his application. Mot. to Dismiss at 15. The government also asserts that Secretaries Rubio and Noem should be dismissed from this case because they have no "role in re-adjudicating the Visa application" and therefore cannot provide the relief requested. Id. at 6. The Court interprets this argument, too, as a redressability challenge. The Court rejects the government's arguments that Plaintiff's claims are not redressable and that Secretary Rubio is an improper party, but agrees that Secretary Noem is an improper party.

5

Again, Plaintiff seeks only a final decision on his visa application. When visa "applications are still pending administrative processing, . . . the Department's review . . . is not complete," and the applicants' injuries "may be redressed with an order to complete that review more expeditiously." Khazaei v. Blinken, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023); see Giza v. Blinken, No. 23-CV-1641 (CRC), 2024 WL 3967284, at *2 (D.D.C. Aug. 27, 2024). Thus, a court order directing Secretary Rubio to expedite Plaintiff's application, whether or not his visa is ultimately approved, would redress his claimed injuries "caused by the Government's failure to decide." Nine Iraqi Allies, 168 F. Supp. 3d at 282.

Furthermore, "[f]or reasons that have already been well ventilated in prior cases," the Court rejects the government's argument that Secretary Rubio is an improper party. Giza, 2024 WL 3967284, at *2; see also Azeez v. Murphy, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024); Shabestary v. Sanders, No. 24-CV-362 (CRC), 2024 WL 5118229, at *2 (D.D.C. Dec. 16, 2024); Stetsiuk v. Mesquita, No. 24-CV-62 (CRC), 2025 WL 405408, at *3 (D.D.C. Feb. 5, 2024). Although "the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications 'within a reasonable time,' as the APA requires." Khazaei, 2023 WL 6065095, at *4; see also Baygan v. Blinken, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *3 (D.D.C. Aug. 8, 2024) ("[C]ontrol over visa *determinations* is distinguishable from control over the *timing* of visa determinations.") (emphasis in original). Here, "[t]he Secretary of State can provide relief [to Plaintiff] by directing consular officers to adjudicate pending visa applications 'within a reasonable time,' 5 U.S.C. § 555(b)." Mashaghzadehfard v. Blinken, No. 23-cv-3164, 2024 WL 4198689, at *3 (D.D.C. Sept. 16, 2024). Such an order would redress Plaintiff's harms.

The government is correct, however, that Secretary Noem is an improper party. Mot. to Dismiss at 6. As an initial matter, Plaintiff's opposition ignores this argument, effectively abandoning his claims against Secretary Noem. In any event, the Court agrees with the government that Secretary Noem should be dismissed. Plaintiff's petition is currently pending adjudication before consular officials in the U.S. Embassy in Paris, "and the Court is unaware of any mechanism through which DHS . . . can exert authority over the timing of that process." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 9 (D.D.C. 2022). Therefore, with respect to Secretary Noem, "there is no relief that the Court could order that would remedy Plaintiff['s] injury—that is, the *Embassy's* delay in adjudicating Plaintiff['s] visas." Id. (emphasis in original).

    B.  Consular Nonreviewability

The government next argues this lawsuit is barred by the doctrine of consular nonreviewability, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021); see Mot. to Dismiss at 16–20. Once again, the Court disagrees. See Giza, 2024 WL 3967284, at *3–4; Azeez, 2024 WL 3924565, at *3; Shabestary, 2024 WL 5118229, at *3–4; Stetsiuk, 2025 WL 405408, at *4.

As it has in a host of other cases, the government cites the Supreme Court's recent reaffirmation of Baan Rao in Department of State v. Muñoz, 144 S. Ct. 1812, 1820 (2024). See 1st Notice of Supp. Auth., ECF No. 14, at 1–2. In Muñoz, the Court held that the doctrine of consular nonreviewability applies when the plaintiff challenges "the executive officer's decision to admit or to exclude a[] [noncitizen]." 144 S. Ct. at 1820 (citation and quotation marks omitted). As already explained, Plaintiff does not challenge the government's decision to admit,

7

exclude, or deny his petition, but rather argues that the government has unreasonably delayed its completion of administrative processing. "And as the Court has observed before, the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance." Shabestary, 2024 WL 5118229, at *3.

In addition, numerous courts in this district, including this one, have made clear that the doctrine of consular nonreviewability applies only to "final visa determinations" and does not bar challenges to decisions that are not yet final. Giliana, 596 F. Supp. 3d at 18 (quoting Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020)). But "applications in administrative processing 'have not been finally refused.'" Giza, 2024 WL 3967284, at *3 (quoting Nine Iraqi Allies, 168 F. Supp. 3d at 292). Plaintiff's application is "still under administrative processing" to assess his visa eligibility, so "there has been no final visa determination." Id. at *3.

The Court acknowledges that one court in this district has diverged from the pack, holding that consular nonreviewability applies to cases in administrative processing because, in its view, courts lack authority to order "additional processing" or demand a "reexamination" of a rejected visa application. Yaghoubnezhad v. Stufft, No. 23-cv-03094 (TNM), 2024 WL 2077551, at *11 (D.D.C. May 9, 2024). This Court respectfully disagrees. Plaintiff is "not asking for a reevaluation of any determination." Giza, 2024 WL 3967284, at *3. Instead, he requests that the government end his "administrative limbo" with a timely, final decision. Id. In this context, consular nonreviewability has no application and does not bar the Court's review.[2]

---

[2] As the Court has explained in prior opinions, Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), does not change this conclusion because it does not displace the principle that "the doctrine of consular nonreviewability applies to challenges based on substance, not timing." Azeez, 2024 WL 3924565 at *3.

C. <u>Discrete Action Requirement</u>

Next, the government contends that Plaintiff's Complaint fails to state a claim for unreasonable delay under the APA or the Mandamus Act. Mot. at 11–12. Because "[t]he standards for reviewing agency inaction—including visa delays—are the same under both the APA and Mandamus Act," the Court will address the claims together. <u>Akrayi v. U.S. Dep't of State</u>, No. 22-CV-1289 (CRC), 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023). "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable[.]" <u>Da Costa v. Immigr. Inv. Program Off.</u>, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted).

The government argues that Plaintiff has not identified any discrete agency action. Mot. to Dismiss at 20–25. It points to <u>Karimova v. Abate</u>, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), which held that § 555(b) of the APA alone was too "general[] and indistinct[]" to establish such a "crystal-clear legal duty" on behalf of the government. <u>Id.</u> at *3–4 (quoting <u>In re Ctr. for Biological Diversity</u>, 53 F.4th 665, 670 (D.C. Cir. 2022)); 2nd Notice of Supp. Auth., ECF No. 15, at 1–4.

Plaintiff, however, also invokes the INA and its existing regulations, Compl. ¶ 30, as the source of the duty "to either issue or refuse a visa after receiving a properly completed and executed application." <u>Karimova</u>, 2024 WL 3517852 at *3. The Court need not decide whether the INA or its regulations impose this duty because, either way, Plaintiff has not plausibly alleged an unreasonable delay in adjudicating his visa application. <u>See</u> <u>Baygan</u>, 2024 WL 3723714, at *5 (citing <u>Rostamnia v. Blinken</u>, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)). Accordingly, the Court will "assume, without deciding, that the State

9

Department has a non-discretionary, discrete duty to adjudicate [Plaintiff's] visa application." Azeez, 2024 WL 3924565, at *3; Shabestary, 2024 WL 5118229, at *4.

### D. Unreasonable Delay

Finally, the government contends that Plaintiff has not shown that the processing of his visa has been unreasonably delayed. To evaluate whether the delay in this case is unreasonable, the Court applies the six-factor test established by Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984). Under the TRAC test, courts must balance the following considerations:

1) the time agencies take to make decisions must be governed by a "rule of reason";
2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80).

"In analyzing a motion to dismiss, courts apply the TRAC factors not to 'determine[e] whether there has been an unreasonable delay,' but to determine if a plaintiff's complaint 'alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" Varghese v. Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (alteration in original) (quoting Jingjing Liu v. Mayorkas, No. 20-CV-654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021)). Moreover, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage." Da Costa., 643 F. Supp. 3d

10

at 12. "If a 'record contains enough facts to evaluate the TRAC factors' at that point, then a Court may appropriately decide to do just that." Id. (quoting Sarlak v. Pompeo, No. 20-CV-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)). Applying the TRAC factors, the Court finds that the complaint fails to plausibly allege unreasonable delay. Factors one, two, and four favor the defendants, factor six is neutral, and although factors three and five weigh in Plaintiff's favor, the other factors vastly outweigh them.

   a. TRAC Factors One and Two

  The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." Giliana, 596 F. Supp. 3d at 20. The first factor is "most important" to the TRAC analysis, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). Where, as here, Congress has not prescribed a statutory deadline, courts "turn to case law as a guide." Id. at 318.

  Although "[t]here is no *per se* rule as to how long is too long to wait for agency action," In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation and quotation marks omitted)), "courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable," Sarlak, 2020 WL 3082018, at *6 (citation omitted) (collecting cases). And in assessing the length of a delay, the Court "calculate[s] the delay 'from the last Government action to the issuance of the opinion.'" Varghese, 2022 WL 3016741, at *5 (quoting Mahmood v. U.S. Dep't of Homeland Sec., No. 21-CV-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)).

11

These factors clearly favor the government. The now 16-month delay in processing Plaintiff's application since his November 2023 interview falls comfortably within the range that courts in this district have held not to be unreasonable. See, e.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29 months of "administrative processing" not unreasonable); Sheibani v. Garland, No. 23-cv-2773 (TJK), 2024 WL 3043156, at *4 (D.D.C. June 18, 2024) (same for 24 months); Pourabdollah v. Blinken, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months). Using this "case law as a guide," then, these two important TRAC factors weigh in the government's favor. Sarlak, 2020 WL 3082018, at *6.

    b.  TRAC Factor Four

The fourth TRAC factor also favors the government. This factor examines "the effect of expediting delayed action on agency activities of a higher or competing priority," TRAC, 750 F.2d at 80, and "carries the greatest weight in many cases," Milligan, 502 F. Supp. 3d at 319. In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Id. (cleaned up) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

Plaintiff argues that he "should not be penalized" for lack of agency resources, Opp'n at 6, but he cannot escape the reality that "[c]onsular processing capacity is presently a zero-sum game, so granting [Plaintiff] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." Lee v. Blinken, No. 23-CV-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (citation and quotation marks omitted). Although the impact of "prioritizing one visa application may prove minimal," "the accumulation of such individual cases being pushed by judicial fiat to the front of the line would

12

erode the ability of agencies to determine their priorities." Id. (same). And the Court has no basis on which to reorder agency priorities, especially where, as here, "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991); see also Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State Department's priority-setting and resource-allocation decisions." (collecting cases)).

           c.   TRAC Factors Three and Five

TRAC factors three and five—the delay's impact on "human health and welfare" and the "interests prejudiced by delay"—appear to favor Plaintiff. TRAC, 750 F.2d at 80. The complaint alleges that the processing delay has led to "deleterious effects on [Plaintiff], his family, and his E-2 business." Compl. ¶¶ 17. He asserts that his E-2 business has suffered substantial setbacks, including the resignation of two employees and the inability to fulfill contracts with major clients. Id. ¶¶ 17–22. He claims the delay has also forced him to maintain dual living arrangements in France and the U.S., incurring additional expenses, while his family remains separated from their home in Maryland. Id. ¶¶ 23–24. Additionally, Plaintiff alleges that his children have been unable to attend school since November 2023 and are at risk of being withdrawn due to their prolonged absence. Id. ¶ 25. These allegations plausibly allege that the delay has negatively affected Plaintiff and his family, including their health and welfare. Thus, factors three and five weigh in Plaintiff's favor. The government's contention that benefits to Plaintiff would only direct resources away from others, Mot. to Dismiss at 34, goes to the fourth factor rather than factors three and five.

d.  TRAC Factor Six

The sixth and final TRAC factor is neutral because Plaintiff does not allege any bad faith in his complaint, and "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." TRAC, 750 F.2d at 80 (citation and quotation marks omitted).

\* \* \*

After carefully considering the TRAC factors, the Court finds that the complaint does not plausibly allege an unreasonable delay.  While the Court recognizes that two factors favor Plaintiff, "the Court is also mindful that 'many others' face similarly difficult circumstances as they await adjudication of their visa applications." Mohammad v. Blinken, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quoting Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)).  As a result, these considerations "are not enough to overcome the other factors that weigh strongly in the government's favor." Palakuru, 521 F. Supp. at 53.

E.  Due Process

Plaintiff also brings a due process claim.  Compl. ¶¶ 32–38.  The government only discusses this claim as part of its standing argument; it offers nothing on the merits. See Mot. to Dismiss at 12–13.  But as explained above, Plaintiff has standing to pursue his claims. Supra Section III.A.  Setting aside the issue of whether Plaintiff has the constitutional right he asserts— a merits question distinct from the standing inquiry—the conduct alleged, if taken as true, would satisfy the requirement of harm to a legally protected interest. See also Olenga v. Gacki, 507 F. Supp. 3d 260, 273 (D.D.C. 2020) ("[W]hether a foreign plaintiff may claim protection under the due process clause is not jurisdictional, but rather a merits issue.").  Because the government does not argue that Plaintiff failed to state a claim for procedural or substantive due process, the

14

Court will decline to do the government's work for it and will allow that claim to proceed. The government may make any additional arguments against Plaintiff's due process claim in a motion for judgment on the pleadings or a motion for summary judgment, should Plaintiff's application not be finally adjudicated in the meantime.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Counts 1 and 3 of the [1] Complaint and that those counts are DISMISSED. It is further

**ORDERED** that Secretary Noem is DISMISSED as a defendant. It is further

**ORDERED** that [12] Defendants' Motion to Dismiss is otherwise DENIED.

**ORDERED** that Defendants file any motion for judgment on the pleadings or for summary judgment by May 2, 2025.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 3, 2025</u>